IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LILIRAE SMITH,

               Plaintiff,

v.                                         No. CIV 07-0736 RB/LFG

THE NEW MEXICO COAL 401(K)
PERSONAL SAVINGS PLAN, THE USA
RETIREMENT SAVINGS PLAN, and THE
BHP BASIC LIFE INSURANCE PLAN,

               Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment (Doc. 34),

filed on April 7, 2008; Defendant BHP USA Retirement Savings Plan's Motion for Order Affirming

Administrative Decision on the ERISA Record (Doc. 36), filed on April 7, 2008; and Defendant

New Mexico Coal 401(k) Personal Savings Plan's Motion for Order Affirming Administrative

Decision on the ERISA Record (Doc. 37), filed on April 7, 2008.[1]  Jurisdiction arises under 28

U.S.C. § 1331.  Having considered the submissions of counsel, relevant law, and being otherwise

fully advised, I deny Plaintiff's motion and grant Defendants' motions.

**I.**      **Background.**

On November 2, 2004, at the age of fifty-seven, Leonard C. Begay, Sr. ("Mr. Begay") was

killed in an automobile accident.  From 1976 until his untimely death, Mr. Begay was employed in

BHP's La Plata and Navajo coal mines located in San Juan County, New Mexico.  During his

twenty-eight years of service, Mr. Begay participated in the BHP New Mexico Coal 401(k) Personal

---

[1] Defendant The BHP Basic Life Insurance Plan's Motion for Order Affirming Administrative Decision on
the ERISA Record (Doc. 35), filed on April 7, 2008, was rendered moot by the dismissal of Plaintiff's claim against
Defendant BHP Basic Life Insurance Plan pursuant to Fed. R. Civ. P. 41(a) on May 23, 2008.  (Doc. 45.)

Savings Plan ("Plan 093819"), the BHP USA Retirement Savings Plan ("Plan 090441"), and the BHP Basic Life Insurance Plan ("Life Insurance"), which included accidental death and dismemberment coverage ("AD&D"), benefits (collectively "Plans").

Plaintiff filed suit under 29 U.S.C. § 1132(a)(1)(B) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461, ("ERISA"), contending that, as the surviving spouse of Mr. Begay, she is entitled to benefits under the Plans.  Plaintiff claims that BHP, on behalf of the Defendants, or Defendants themselves, wrongfully paid several hundred thousand dollars from the Plans to the children of Mr. Begay from a prior marriage.  Defendants deny they had a duty to pay benefits to Plaintiff and state that they properly paid all benefits to Mr. Begay's named beneficiaries.

On May 23, 2008, Plaintiff's claims with respect to the Life Insurance, including AD&D, were dismissed on the joint motion of the parties pursuant to Fed. R. Civ. P. 41(a).  The remaining claims concern Plan 093819 and Plan 090441.  The parties have stipulated that Plan 093819 is an ERISA Plan of which Broken Hill Proprietary (USA) Inc. is the Plan Administrator and Plan Sponsor, and that Plan 090441 is an ERISA Plan of which BHP Holdings (Operations), Inc. is the Plan Administrator and Plan Sponsor.  (Doc. 15.)

## II.     Administrative Record.

On his October 11, 1976 employment application, Mr. Begay stated he was married to Suzie Y. Begay.  (R. 344.) On Group Insurance Program enrollment forms, dated October 31, 1978 and March 1, 1979, Mr. Begay designated "Suzie Y. Begay, wife,"as a beneficiary on group insurance coverages.  (R. 355, 356.)  On Group Insurance Program enrollment forms, dated April 17, 1988 and January 30, 1985, Mr. Begay designated "Suzannah Begay"as a beneficiary on group insurance coverages.  (R. 353, 359.)

On March 6, 1991, Mr. Begay completed a Personnel Data Information Form indicating that

he was "Divorced" and listed his brother, Johnnie Charley, as his emergency contact.  (R. 342.)
Personnel Action Forms, dated November 1, 1993, December 1, 1993, March 20, 1994, August 1,
1994, August 1, 1995, November 18, 1996, July 1, 1997, August 4, 1997, and October 12, 1997,
classified Mr. Begay's martial status as "D" for "Divorced."  (R. 311-314, 319, 321-322, 324, 325.)
More recent Personnel Action Forms lacked a "Marital Status" field. (R. 306.)

On March 21, 2002, Mr. Begay completed an Enrollment/Change Form for "Family Status
Change"due to the death of his son, Johansen Begay. (R. 250.)  Mr. Begay elected health care
coverage for "Me and my family," but listed his son, 21-year-old Elnathan Begay, as the only
eligible dependent. (R. 250.)  In that form, Mr. Begay also designated his sons, Leonard C. Begay,
Jr. (20%) and Elnathan L. Begay (60%), and his daughter, Johannah A. Billsie (20%), as
beneficiaries of his Life Insurance and AD&D coverage. (R. 250.)

On October 10, 2002, Mr. Begay submitted a "Beneficiary Designation" form for Plan
093819 designating his children as his beneficiaries: "Elnathan Lynn Begay" (60%), "Johannah
Billsie" (20%), and "Leonard C. Begay, Jr." (20%).  (R. 511.)  Mr. Begay checked the box stating
"I hereby represent and certify that I am not married."  (R. 511.)

The Administrative Record does not contain a beneficiary designation form for Plan 090441.
However, a quarterly statement for Plan 090441, dated October 1, 2004-December 31, 2004, lists
Johannah Billsie, Elnathan L. Begay and Leonard C.  Begay, Jr. as beneficiaries with "0.00%"
allocations.  (R. 522.)

On November 2, 2004, Mr. Begay died in an automobile accident.  (R. 301.)

On November 3, 2004, Elnathan L. Begay, Leonard C. Begay, Jr., and Johannah A. Billsie
each submitted a "Beneficiary's Life Insurance Claim Statement" to Metropolitan Life Insurance
Company for benefits under the Life Insurance and AD&D coverages.  (R. 247-49.)  All three claim

forms indicated that Mr. Begay's marital status was "Divorced."  (*Id.*)

In a November 11, 2004 email from Renae Duncan, a Retirement Plan Specialist for BHP, to Roe Arn, Supervisor of Human Resources at the BHP New Mexico Coal mine in Waterflow, New Mexico, Ms. Duncan noted that her office did not have a record of being notified of Mr. Begay's divorce and they had Mr. Begay's marital status recorded as married, but "in GSAP his marital status is divorced."  (R. 379.)  Ms. Duncan inquired whether Mr. Begay had provided Ms. Arn's office with a divorce decree or a qualified domestic relations order ("QDRO").  (R. 379.)  The Administrative Record contains neither court documents relating to a divorce nor a consent form.

The December 6, 2004 death certificate for Mr. Begay lists his marital status as "Divorced," and the available blank to list a surviving spouse reads "N/A."  (R. 301.)

On December 21, 2004, Leonard C. Begay, Jr. died in an automobile accident.  (R. 395.)

On January 6, 2005, the Eleventh Judicial District Court, County of San Juan, State of New Mexico appointed Plaintiff as personal representative of Mr. Begay for the purpose of pursuing an action under the New Mexico Wrongful Death Act, N.M. Stat. Ann. § 42-2-1, *et seq.*  (R. 508-509.)

On January 25, 2005, shares of Mr. Begay's basic life insurance benefits were paid to Johannah Billsie, in the amount of $8,554.59, and to Elnathan Begay, in the amount of $8,554.59.  (R. 245; 531; 569.)

On January 27, 2005, shares of Mr. Begay's life insurance and AD&D benefits were paid to Johannah Billsie, in the amount of $24,084.82, and to Elnathan Begay, in the amount of $96,339.29.  (R. 245; 531; 563.)

On February 3 and 10, 2005, notice of Plaintiff's petition to validate her marriage to Mr. Begay was published in the Navaho Times.  (R. 505.)

In a letter dated March 14, 2005, Ms. Arn stated that the Pension Benefits group in BHP's

Houston Office was working on identifying the beneficiaries for each of Mr. Begay's benefit plans. (R. 389.)

On March 21, 2005, Plaintiff and Johannah Billsie filed a "Stipulation for Validation of Marriage" in the Family Court of the Navajo Nation, in a case styled *In the Matter of the Marriage of Lilirae Smith and Leonard C. Begay, Sr., Deceased, Lilirae Smith, Petitioner*, and numbered SR-FC-1515-04-CV.  (R. at 505-507.)  In that document, Plaintiff and Ms. Billsie stipulated that the union of Plaintiff and Mr. Begay "met the general requirements for marriage, and the specific requirements for common-law marriage under N.N.C., Title 9." (R. 506.)  Plaintiff and Ms. Billsie agreed that the court could enter an order validating the common-law marriage of Plaintiff and Mr. Begay retroactive to September 1, 2000.  (R. 506.)

On March 24, 2005, Plaintiff delivered to the BHP Human Resources office at the New Mexico Coal mine in Waterflow, New Mexico, the Stipulation for Validation of Marriage, (R. 505-507), that the union of Plaintiff and Mr. Begay "met the general requirements for marriage , and the specific requirements for common-law marriage under N.N.C., Title 9."  (R. 505-506.) (R. 490; Complaint ¶10; Answer ¶10.)  The Stipulation for Validation of Marriage further provided that "the Court may enter an Order validating the marriage of LiliRae Smith and Leonard C.  Begay, Sr. Which shall be retroactive to September 1, 2000."  (R.  506.)  On the same day, Plaintiff also provided to the BHP Human Resources office at the mine a notice of her appointment as personal representative under the New Mexico Wrongful Death Act. (R. 508-509.) (R. 490; Complaint ¶10; Answer ¶10.)

On April 1, 2005, Vanguard disbursed $72,932.20 from Plan 090441 to Johannah Billsie. (R. 541.)

On June 16, 2005, Vanguard disbursed $225,561.75 from Plan 090441 to Elnathan Begay.

(R. 543.)

On July 13, 2005, Suzannah M. Gould was appointed as administrator of the estate of Leonard C. Begay, Jr. (R. 393.) On July 18, 2005 and August 1, 2005, Mr. Begay, Jr.'s share of Mr. Begay Sr.'s life insurance and AD&D benefits were paid to Suzannah Gould, as administrator of the estate of Mr. Begay, Jr., in the amounts of $32,513.15 and $1,113.47. (R. 245; 531.)

On September 15, 2005, Plaintiff notified BHP that no pension or other employment benefits should be distributed until the status of her marriage to Mr. Begay was fully resolved. (R. 392.)

On January 17, 2006, Vanguard disbursed $8,999.82 from Plan 093819 to Johannah Billsie. (R. 548.)

On January 23, 2006, Vanguard disbursed $78,308.73 from Plan 090441, and $9,004.787 from Plan 093819 to Suzannah M. Gould. (R. 542; 547.)

On June 29, 2006, Vanguard disbursed $27,546.89 from Plan 093819 to Elnathan Begay. (R. 550.)

On August 7, 2006, the Family Court for the Navajo Nation, on remand from the Navajo Nation Supreme Court, entered a Validation of Marriage Order "that the common law union of Lilirae Smith and Leonard C. Begay, Sr. is hereby validated as marriage pursuant to 9 N.N.C. Sec. 1-10, Chapter 1, and said parties are declared to be husband and wife from August 22, 1998[2] to the date of Leonard C. Begay's death on November 2, 2004." (R. 406.)

On August 16, 2006, Plaintiff provided BHP with a copy of the Validation of Marriage Order and informed BHP of her intent to open a probate matter. (R. 405-407.) Plaintiff's counsel

---

[2] The date in the August 7, 2006 Validation of Marriage Order, August 22, 1998, is earlier than September 1, 2000, the date stated in the March 21, 2005 "Stipulation for Validation of Marriage." (*Compare* R. 506 *with* R. 406.)

requested "information on any funds that have been disbursed to date, including the type of account, amounts disbursed and the recipient of the funds."  (R. 405-407.)

On September 26, 2006, the Family Court for the Navajo Nation appointed Plaintiff as the personal representative/administrator of Mr. Begay's estate.  (R.409-410.)  On October 4, 2006, Plaintiff's counsel provided a copy of the appointment order to Ms. Arn.  (R.411-414.)

In an October 19, 2006 letter from Renae Duncan to Plaintiff, BHP recognized Plaintiff as Mr. Begay's surviving spouse and admitted that she was "to receive a percentage of his accrued benefit in the BHP USA Retirement Income Plan (salaried pension plan)."  (R. 415, 423-432.)  Ms. Duncan also stated that "Mr. Begay was also a participant in the Navajo Mine Retirement Plan (hourly pension plan) and [Plaintiff would] receive election options under separate mailing." (R. 415.)  On October 31, 2006, BHP confirmed its recognition of LiliRae Smith as Mr. Begay's "surviving spouse for the purposes of the benefits to be paid from the BHP USA Retirement Income Plan ("RIP") and the Navajo Retirement Plan ("NRP")". (R. 422.)

On November 20, 2006, Plaintiff's counsel faxed a letter dated November 16, 2006 to Ms. Arn, specifically inquiring about the Plans.  (R. 452-453.)

In a December 4, 2006 letter to Plaintiff's counsel, Ms. Arn admitted that Vanguard[3] was unable to find the beneficiary designation form for Plan 090441. (R. 515.)  According to Ms. Arn, an account statement showed the beneficiaries for Plan 090441 "were the same as in the Personal Savings Plan (Plan 093819), but due to a file overlay problem connected to the transition of the plan to Vanguard, [the statement] does not show the percentages going to each beneficiary." (R. 515.)

---

[3] The Assets of Plan 090441 are held in a trust maintained by The Vanguard Fiduciary Trust Company.  (R. 153.)  Plan 090441 is self-administered by BHP Holdings (Operations) Inc., and the day-to-day administration and record keeping is done by the Vanguard Service Center for the BHP Savings Plans.  (R. 154.)

Ms. Arn explained that the funds in Plan 090441 and Plan 093819 were "paid out per a beneficiary designation completed by Mr. Begay."  (R. 515-516.)

As grounds for the decision to pay the beneficiaries, as opposed to Plaintiff, Ms. Arn listed the following points:

> 1. The administrator of a retirement plan may rely on the affirmation of an employee of marital status. Absent conflicting information or knowledge to the contrary, the administrator has no obligation to ascertain whether or not an employee is married, single or divorced when he has asserted any given status. The administrator has no obligation to ascertain whether or not the assertion of marital status is false or fraudulent.
> 2. Mr. Begay executed a beneficiary designation in 2002 in which he represented and certified he was not married.
> 3. Mr. Begay's death certificate indicated he was divorced.
> 4. Mr. Begay did not provide spousal coverage under his medical and dental insurance offered through his employer.
> 5. Mr. Begay's common law spouse did not contact the plan administrator upon his death concerning any benefits she might be entitled to receive.
> 6. If conflicting claims for a deceased employee's benefits arise, it would be BHP Billiton's procedure to resolve the issue with reference to the applicable plan documents, any beneficiary designations executed by the employee and other evidence that would allow us to determine the proper disposition of any proceeds from employment related benefit programs. If it is not possible to make the determination based on the facts, circumstances and documents listed above, BHP Billiton would request assistance from the appropriate court system to make that determination which would generally be the federal courts due to the ERISA pre-emption.

(R. 515-517.)

In her December 4, 2006 letter, Ms. Arn also referenced Plan 090443 that was "inadvertently overlooked during the disposition of Mr. Begay's accounts."  (R. 516.)  Ms. Arn wrote " [s]ince there is no beneficiary designation on file, the Plan Administrator will request a Vanguard account be set up for Ms. Smith as the surviving spouse."  (R. 516.)

On December 12, 2006, Plaintiff's counsel asserted in a letter to BHP that any disbursements made after the RSP was on notice of Plaintiff's claim that RSP benefits were "voidable" and would

8

"have to be restored to [Begay, Sr.'s] estate." (R. 490-492.) He alleged the Plan was on notice of Plaintiff's status as Mr. Begay's common law wife as early as March 24, 2005, but at the latest, by September 15, 2005. (R. 490-492.) He also challenged the evidence offered by the Plan to support its decision. (R. 490-492.)

On April 27, 2007, Ms. Arn responded to Plaintiff counsel's letter of December 12, 2006. (R. 577-578.) Specifically, the letter stated:

> Quarterly statements for the [RSP] previously provided identified the same beneficiaries as those listed in the New Mexico Coal Plan, but due to a file overlay problem connected to the transition of the plan to Vanguard, the statements do not show the percentages going to each beneficiary. The actual paper form signed by Mr. Begay in 2002 did indicate the percentages and it was that form that was the basis for survivor benefits under the Plans. We maintain that the payments were made in accordance with the rules of the Plans and the apparent wishes of the decedent.

(R. 577-578.)

As to the justifications for the decision, Ms. Arn elaborated:

> 1. The administrator of a retirement plan may rely on the affirmation of an employee of marital status. Absent conflicting information or knowledge to the contrary, the administrator has no obligation to ascertain whether or not an employee is married, single or divorced when he has asserted any given status. The administrator has no obligation to ascertain whether or not the assertion of marital status is false or fraudulent.
> 2. Mr. Begay executed a beneficiary designation in 2002 in which he represented and certified he was not married.
> 3. There was no beneficiary designation form on file with BHP, executed by Mr. Begay, that was later in time from the form executed in 2002.
> 4. Mr. Begay's death certificate indicated he was divorced.
> 5. Mr. Begay did not provide spousal coverage under his medical and dental insurance offered through his employer. While not dispositive of the matter at hand, it is indicative of the lack of knowledge that BHP, had at the time of Mr. Begay's death in early November 2004, that he was "married."
> 6. Your client did not contact the plan administrator immediately upon his death concerning any benefits she might be entitled to receive as a valid surviving spouse. Based on her actions to have her status adjudicated as a spouse in early 2005, she appeared to have realized or should have known that there was a controversy as to her legal status. Despite this, she made no attempt to notify BHP until almost 5 months from the date of Mr. Begay's death. By that time, payments had begun the

9

prior month (4 months from the date of Mr. Begay's death) to the named beneficiaries on file with BHP. These payments were made as part of a routine process of distribution to non-spouse beneficiaries and should be viewed in the context of what was actually known to BHP at that time. Implied knowledge of a controversy surrounding your client's attempt to be named as Mr. Begay's spouse cannot be imputed to BHP in February, 2005.

7. If conflicting claims for a deceased employee's benefits had arisen on a timely basis, it would be BHP Billiton's procedure to resolve the issue with reference to the applicable plan documents, any beneficiary designations executed by the employee and other evidence that would allow us to determine the proper disposition of any proceeds from employment related benefit programs. If it is not possible to make the determination based on the facts, circumstances and documents listed above, BHP Billiton would request assistance from the appropriate court system to make that determination, which would generally be the federal courts due to the ERISA pre-emption.

(R. 577-578.)

Ms. Arn's April 27, 2007 letter also stated: "At this point, the aforementioned Plan monies have been properly paid out in BHP Billiton's view and the matter is resolved as a matter of benefits administration." (R. 578.)

Plan 093819 is a defined contribution plan, funded by both employee and employer contributions. (R. 70.) BHP (USA), Inc. is the Plan Sponsor, Administrator and fiduciary of Plan 093819. (*Id*.) The assets of Plan 093819 are held in a trust maintained with the American Express Trust Company. (*Id*.) BHP (USA), Inc. delegated its fiduciary duties to disclose information about investment options, comply with investment instructions, and provide information about Plan 093819 to the American Express Trust Company. (*Id*.) Plan 093819 is self-administered by BHP (USA), Inc. and the day-to-day administration and record keeping is done by the American Express Trust Company. (*Id*.)

Plan 090441 is a defined contribution plan. (R. 153.) BHP Holdings (Operations) Inc. is the Plan Sponsor and Plan Administrator of Plan 090441. (R. 88, 153.) BHP Holdings (Operations) Inc. is the fiduciary for Plan 090441. (R. 153.) The Assets of Plan 090441 are held in a trust maintained

by The Vanguard Fiduciary Trust Company.  (*Id.*)  Plan 090441 is self-administered by BHP

Holdings (Operations) Inc., and the day-to-day administration and record keeping is done by the

Vanguard Service Center for the BHP Savings Plans.  (R. 154.)

Plans 093819 and 090441 provide, in part:

(b)     <u>Beneficiary</u>. Ordinarily, a Participant's Beneficiary shall be the person or persons so designated by the Participant. However, . . . any designation by a married Participant of a person other than the Participant's spouse as Beneficiary shall be effective only if his or her spouse consents to such a designation.  The spouse's consent shall be in writing, shall acknowledge the effect of such a designation and shall be witnessed by a notary public.  Subject to the foregoing, a Participant may designate or change such Participant's Beneficiary at any time.  To be effective, any such designation or change must be in writing on the prescribed form and must be received by BHP or its agent before the Participant's death. If any Participant fails to designate a Beneficiary, . . . the Beneficiary shall be the participant's spouse . . .. A Participant's divorce will not automatically revoke the Participant's prior valid designation of his or her spouse as a Beneficiary. . . .

BHP is the named fiduciary which has the authority to control and manage the operation and administration of the Plan.  BHP shall make such rules, regulations and computations and shall take such other actions to administer the Plan as BHP may deem appropriate.  BHP shall have sole discretion to interpret the terms of the Plan and to determine the eligibility for benefits pursuant to the objective criteria set forth in the Plan.

(R. 12; 88.)

## III.    Discussion.

### A.     Standard of Review.

In *Metropolitan Life Ins. Co. v. Glenn*, ____U.S. ____, 128 S.Ct. 2343 (June 19, 2008), after

briefing in this matter was completed, the Supreme Court summarized the appropriate standard of

review for ERISA cases in the following terms:

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), this Court addressed "the appropriate standard of judicial review of benefit determinations by fiduciaries or plan administrators under" § 1132(a)(1)(B), the ERISA provision at issue here. *Firestone* set forth four principles of review relevant here. (1) In determining the appropriate standard of review, a court should be guided by

11

principles of trust law; in doing so, it should analogize a plan administrator to the trustee of a common-law trust; and it should consider a benefit determination to be a fiduciary act ( i.e., an act in which the administrator owes a special duty of loyalty to the plan beneficiaries).

(2) Principles of trust law require courts to review a denial of plan benefits under a de novo standard unless the plan provides to the contrary.

(3) Where the plan provides to the contrary by granting the administrator or fiduciary discretionary authority to determine eligibility for benefits, trust principles make a deferential standard of review appropriate (citing Restatement § 187 (abuse-of-discretion standard).

(4) If a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion.

*Glenn*, 128 S.Ct. at 2347-48 (citations and quotations omitted).

The language of the Plans clearly provides BHP with discretionary authority to determine eligibility for benefits.  Specifically, the Plans provide

BHP is the named fiduciary which has the authority to control and manage the operation and administration of the Plan.  BHP shall make such rules, regulations and computations and shall take such other actions to administer the Plan as BHP may deem appropriate.  BHP shall have sole discretion to interpret the terms of the Plan and to determine the eligibility for benefits pursuant to the objective criteria set forth in the Plan.

(R. 12; 88.)

This language grants BHP discretionary authority to determine eligibility for benefits.  Therefore, a deferential standard of review is appropriate.  The proper terms to describe such standard of review, and the appropriate degree of deference to afford BHP remains to be determined.

While *Glenn* speaks in terms of the "abuse of discretion" standard, the parties' briefs and Tenth Circuit cases employ the term "arbitrary and capricious" to describe the standard.  The semantic variation presents "distinction without a difference." *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 825 n. 1 (10th Cir. 1996).  The Tenth Circuit treats the terms "arbitrary and capricious" and "abuse of discretion" as interchangeable in the ERISA context. *Fought v. Unum*

12

*Life Ins. Co. Of Am.*, 379 F.3d 997, 1002 n.1 (10th Cir. 2004).  A fair reading of *Glenn* indicates that

it did not modify the overall standard of review so much as refine its application in cases involving

a conflict of interest.  In order to maintain consistency with Tenth Circuit case law, as well as the

briefs which were filed prior to the issuance of *Glenn*, the term "arbitrary and capricious" is used

herein in reference to the standard of review.

The Tenth Circuit has discussed the standard of review for a denial of benefits claim under

ERISA as follows:

> A denial of benefits covered by ERISA is to be reviewed under a de novo standard
> unless the benefit plan gives the administrator or fiduciary discretionary authority to
> determine eligibility for benefits or to construe the terms of the plan. If the benefit
> plan gives discretion to a plan administrator, then a decision denying benefits is
> typically reviewed under an arbitrary and capricious standard. Such review is limited
> to determining whether the interpretation of the plan was reasonable and made in
> good faith.
>
> If, however, a plan administrator operates under an inherent or proven conflict of
> interest or there is a serious procedural irregularity in the administrative process, it
> is necessary to adjust the standard of review. Effectively, this court has crafted a
> sliding scale approach where the reviewing court will always apply an arbitrary and
> capricious standard, but *the court must decrease the level of deference given in
> proportion to the seriousness of the conflict.*  If a plaintiff can prove a serious
> conflict of interest or the existence of a serious procedural irregularity, then *the
> burden shifts to the plan administrator to prove the reasonableness of its decision
> under the arbitrary and capricious standard.*  When the burden shifts in this manner,
> the plan administrator must demonstrate that its interpretation of the terms of the
> plan is reasonable and that its application of those terms to the claimant is supported
> by substantial evidence.

*Flinders v. Workforce Stabilization Plan of Phillips Petrol. Co.*, 491 F.3d 1181, 1189-90

(10th Cir. 2007) (internal quotations and citations omitted) (emphasis added).  *See also Fought*, 379

F.3d at 1003.

Plaintiff asserts that BHP operates under an inherent conflict of interest, as both the

administrator and fiduciary of the Plans.  A plan administrator which both evaluates claims for

benefits and pays benefit claims is operating under a conflict of interest.  *Glenn*, 128 S.Ct. at 2348.

13

This rule applies to both employers and insurers who hold dual roles.  *Id.*, 123 S.Ct. at 2348-50.  The conflict is more apparent where the employer both funds the plan and evaluates the claims.  *Id*.

ERISA requires a plan administrator to discharge its discretionary duties solely in the interests of the plan's participants and beneficiaries.  It mandates full and fair review of claim denials, and it "supplements marketplace and regulatory controls with judicial review of individual claim denials."  *Glenn*, 123 S.Ct. at 2350.  An employer's conflict is "a factor in determining whether the plan administrator has abused its discretion in denying benefits; . . . the significance of the factor will depend upon the circumstances of the particular case."  *Id*.  The Court, in *Glenn*, concluded that "a conflict should be weighed as a factor in determining whether there is an abuse of discretion."  *Id.*

The Tenth Circuit stated in *Fought*:

> When the plan administrator operates under either (1) an inherent conflict of interest; (2) a proven conflict of interest; or (3) when a serious procedural irregularity exists, and the plan administrator has denied coverage, an additional reduction in deference is appropriate. Under this less deferential standard, the plan administrator bears the burden of proving the reasonableness of its decision pursuant to this court's traditional arbitrary and capricious standard.  In such instances, the plan administrator must demonstrate that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence. The district court must take a hard look at the evidence and arguments presented to the plan administrator to ensure that the decision was a reasoned application of the terms of the plan to the particular case, untainted by the conflict of interest.

*Fought*, 379 F.3d at 1006 (citations omitted).

Under the applicable standard of review, the burden is on Defendants to prove the reasonableness of its denial under the arbitrary and capricious standard. *Glenn*, 123 S.Ct. at 2350; *Flinders*, 491 F.3d at 1189; *Fought*, 379 F.3d at 1006.  Defendants must demonstrate that their interpretation of the terms of the plans is reasonable and that their application of those terms to

Plaintiff's claim is supported by substantial evidence.  *Id.*

   **B.      Evidence Considered.**

   The Tenth Circuit has held that "the federal courts are limited to the administrative record-the materials compiled by the administrator in the course of making his decision." *Hall v. Unum Life Ins. Co. of Am.*, 300 F.3d 1197, 1201 (10th Cir. 2002) (internal quotation marks and citations omitted). "In determining whether the plan administrator's decision was arbitrary and capricious, the district court generally may consider only the arguments and evidence before the administrator at the time it made that decision." *Sandoval v. Aetna Life and Cas. Ins. Co.*, 967 F.2d 377, 380 (10th Cir. 1992).  "In effect, a curtain falls when the fiduciary completes its review, and for purposes of determining if substantial evidence supported the decision, the district court must evaluate the record as it was at the time of the decision." *Id.* at 381.

   Defendants issued the final decision through BHP's agent, Ms. Arn, on April 27, 2007. Thus, the Court will consider only the arguments and evidence in the administrative record as of April 27, 2007.

   **C.      Defendants' arguments concerning timeliness are not well-taken.**

   Defendants assert that Plaintiff failed to submit her claim for benefits until her attorney specifically inquired about the Plans on November 20, 2006. Defendants' position is unsupported.

   Plaintiff submitted documents indicating that she was the surviving spouse of Mr. Begay to Ms. Arn's office. While the Plans contain alternative procedures for submitting claims, there is no indication that Defendants informed Plaintiff of these procedures or otherwise advised her that her claim was insufficient until the issues were raised in the briefs filed in this lawsuit.  Indeed, Ms. Arn's final decision does not rely on this basis.  When reviewing a plan administrator's decision to deny benefits, a court must "consider only the rationale asserted by the plan administrator in the

administrative record . . .". *Flinders*, 491 F.3d at 1190. Thus, Defendants' argument that Plaintiff was dilatory in submitting her claim for benefits is not helpful to their cause.

> **D.    Plaintiff was declared to be the surviving spouse of Mr. Begay after benefits were paid from Plan 090441 and Plan 093819.**

Mr. Begay died before retirement age and while still employed by BHP. Under these circumstances, ERISA provides that retirement plan benefits can only be paid to a surviving spouse. 29 U.S.C. § 1055(a)(2). *See also Boggs v. Boggs*, 520 U.S. 833, 843 (1997); *Patton v. Denver Post Corp.*, 326 F.3d 1148, 1150 (10th Cir. 2003). As the Fifth Circuit explained in *Manning v. Hayes*, 212 F.3d 866, 871 (5th Cir. 2000), both ERISA and the Internal Revenue Code contain provisions mandating that qualified retirement plans provide death benefits to surviving spouses, 29 U.S.C. § 1055(a)(2), and that they allow participants to designate nonspousal beneficiaries only pursuant to spousal consent or entry of a qualified domestic relations order (QDRO). *See* 29 U.S.C. § 1055(c)(1)(A) (spousal consent), and § 1056 (QDRO); 26 U.S.C. § 401(a)(11). The statutory object of these provisions "is to ensure a stream of income to surviving spouses." *Boggs*, 520 U.S. 844. Under ERISA, as well as the plain language of the Plans, surviving spouse status would trump a beneficiary designation in the absence of consent or a QDRO.[4]

Plaintiff contends that Defendants erred in paying benefits to Mr. Begay's children, pursuant to the beneficiary designation, because Plaintiff provided notice to BHP that she claimed to be the surviving spouse of Mr. Begay.

For the purposes of ERISA, "the common law meaning of 'spouse' is settled, straightforward, and dispositive: 'spouse' means a man or woman joined in wedlock, in short, one's husband or wife." *Kahn v. Kahn*, 801 F.Supp. 1237, 1241 (S.D.N.Y. 1992) (citing Black's Law

---

[4] The administrative record contains neither a QDRO nor spousal consent form.

Dictionary (5th Ed.1979), and Webster's Third New International Dictionary ).  A spouse is "[o]ne's husband or wife by legal marriage."  *Williams v. Bd. of Tr. of the Int'l Longshoremen's Ass'n*, 388 F.Supp.2d 1353, 1365 (S.D.Fl. 2005).  The term "spouse" refers to the person to whom one is lawfully married, even if the two people no longer co-habitate, are no longer intimate, and are in the process of getting divorced.  *Davis v. College Suppliers Co.*, 813 F.Supp. 1234, 1237 (S.D. Miss.1993); *In re Lefkowitz*, 767 F.Supp. 501, 508 n. 12 (S.D.N.Y.1991).

The determination of who qualifies as the person to whom the participant is legally married at the time of their death is dependent upon state law because there is no federal common-law with respect to marriage.  While the ERISA pre-emption provision was intended to "displace all state laws that fall within its sphere . . . Congress did not intend to pre-empt areas of traditional state regulation."  *Metro. Life Ins. Co. v. Mass. Traveler's Ins. Co.*, 471 U.S. 724, 739-40 (1985). Although New Mexico does not authorize common-law marriages, it will recognize such a marriage if valid in the jurisdiction where consummated.  N.M. Stat. Ann. § 40-1-10; *In re Bivians' Estate*, 652 P.2d 744, 748 (N.M. App. 1982).  New Mexico law would recognize the validity of the marriage if the marriage were valid under Navajo law.  Thus, the issue of whether Plaintiff is a "surviving spouse" for purposes of ERISA depends on whether she was legally married to Mr. Begay at the time of his death.

After Mr. Begay died, Plaintiff took steps to have her purported marriage to Mr. Begay validated.  On March 21, 2005, Plaintiff and Johannah Billsie filed a "Stipulation for Validation of Marriage" in the Family Court of the Navajo Nation, in a case styled *In the Matter of the Marriage of Lilirae Smith and Leonard C. Begay, Sr., Deceased, Lilirae Smith, Petitioner*, and numbered SR-FC-1515-04-CV.  (R. at 505-507.)  In that document, Plaintiff and Ms. Billsie stipulated that the union of Plaintiff and Mr. Begay "met the general requirements for marriage, and the specific

17

requirements for common-law marriage under N.N.C., Title 9." (R. 506.) Plaintiff and Ms. Billsie agreed that the court could enter an order validating the common-law marriage of Plaintiff and Mr. Begay retroactive to September 1, 2000. (R. 506.)

On July 19, 2006, the Supreme Court of the Navajo Nation decided this issue in favor of Plaintiff. *See In the Matter of the Marriage of Lilirae Smith and Leonard C. Begay, Sr.,* No. SC-CV-45-05, slip op. at 7 (Nav. Sup. Ct. July 19, 2006) ( http://www.navajocourts.org/index3.htm.) On August 7, 2006, the Family Court for the Navajo Nation, on remand from the Navajo Nation Supreme Court, entered a Validation of Marriage Order "that the common law union of Lilirae Smith and Leonard C. Begay, Sr. is hereby validated as marriage pursuant to 9 N.N.C. Sec. 1-10, Chapter 1, and said parties are declared to be husband and wife from August 22, 1998 to the date of Leonard C. Begay's death on November 2, 2004." (R. 406.) Plaintiff's marriage to Mr. Begay was validated over twenty-one months after Mr. Begay's death.

### E. Application of the ERISA standard.

The issue herein is not whether Plaintiff's marriage to Mr. Begay was valid. The issue herein is whether Defendants' decision to pay benefits to Mr. Begay's children, as opposed to Plaintiff, prior to August 7, 2006, was reasonable and supported by substantial evidence. *Flinders*, 491 F.3d at 1189-90; *Fought*, 379 F.3d at 1003.

The Court will assume, for the sake of argument, that Plaintiff has established a conflict of interest. The Supreme Court has held that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Glenn*, 128 S.Ct. at 2348. In such circumstances, the Tenth Circuit has held that the burden shifts to the fiduciary to prove "the reasonableness of its decision pursuant to th[e][ ] traditional arbitrary and capricious standard."

18

*Fought*, 379 F.3d at 1006.  The burden is on Defendants to prove the reasonableness of its denial under the arbitrary and capricious standard. *Glenn*, 123 S.Ct. at 2350; *Flinders*, 491 F.3d at 1189; *Fought*, 379 F.3d at 1006.

Defendants must demonstrate that their interpretation of the terms of the plans is reasonable and that their application of those terms to Plaintiff's claim is supported by substantial evidence. *Fought*, 379 F.3d at 1006.  The fiduciary must show "that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence." *Id.*  The reviewing court must "take a hard look at the evidence and arguments presented to the plan administrator to ensure that the decision was a reasoned application of the terms of the plan to the particular case. . . ."  *Id.*

A hard look at the evidence and arguments presented to Defendants, prior to August 7, 2006, establishes that the decisions to pay benefits to the designated beneficiaries represented reasoned applications of the terms of the Plans to Plaintiff's case.

On March 24, 2005, before funds were paid out, Plaintiff presented Defendants with the Stipulation for Validation of Marriage.  As of that date, Defendants were on notice that Plaintiff claimed to be the common law spouse of Mr.  Begay.  However, the Stipulation certainly did not constitute any legal acknowledgment of the purported marriage.  It amounted, at that time, to no more than an agreement between a woman claiming marital status and one of the decedent's children that the marriage *could* be validated.  While the Stipulation presented the assertion that Plaintiff was Mr. Begay's common-law spouse, it could not conclusively overwhelm the Plan's contrary evidence so as to make Defendants' rejection of Plaintiff's claimed status unreasonable or arbitrary and capricious.  As of April 1, 2005, the record contained no substantial evidence of a common law marriage between Plaintiff and Mr. Begay.

On the contrary, there was substantial evidence to support Defendants' determination that Mr. Begay was not married.  On October 10, 2002, Mr. Begay certified, in writing, that he was not married and designated his children as the beneficiaries of Plan 093918.  At the time of the payments from Plans 090441 and 093819 began, there was nothing in any document in the administrative record that would have supported the conclusion that Mr. Begay was married to Plaintiff or cohabitated with her.  Certainly no court had validated the existence of a common law marriage as of that date.  Mr. Begay's children repeatedly represented he was not married.  Indeed, Mr. Begay's Death Certificate (witnessed by JoHannah Billsie, the only beneficiary who signed the March 2005 Stipulation) lists his marital status as "Divorced," and the available blank to list a surviving spouse reads "N/A."  The administrative record amply demonstrated that, during his lifetime, Mr. Begay repeatedly represented to BHP that he was divorced.

Plaintiff's marriage to Mr. Begay was validated on August 7, 2006, which was after the funds from Plans 090441 and 093819 had been paid out.  From March 24, 2005 to August 7, 2006, Defendants were on notice only that Mr. Begay had a potential surviving spouse.  Plaintiff's efforts to validate her marriage to Mr. Begay did not blossom until August 7, 2006, when the Supreme Court of the Navajo Nation reversed the decision of the Family Court for the Navajo Nation that there was no common law marriage.  *See In the Matter of the Marriage of Lilirae Smith and Leonard C. Begay, Sr.,* No. SC-CV-45-05, slip op. at 7 (Nav. Sup. Ct. July 19, 2006) (http://www.navajocourts.org/index3.htm.)  Only on remand, on August 7, 2006, did the Family Court for the Navajo Nation recognize the existence of the common law marriage between Plaintiff and Mr. Begay.

Until August 7, 2006, the balance of the evidence indicated that Mr. Begay did not have a surviving spouse as of the time of his death.  Defendants' actions, in choosing designated

beneficiaries over a woman who claimed surviving spouse status without legal support, were not arbitrary and capricious.  Defendants' decision to rely on existing documentation to determine the proper beneficiaries of Plan 090441 was both reasonable and supported by substantial evidence.

After Plaintiff's marriage to Mr. Begay was validated on August 7, 2006, BHP recognized Plaintiff as Mr. Begay's surviving spouse and paid her what funds remained.  However, before that time and based on the record before them, it was both logical and reasonable for Defendants to determine that there was insufficient evidence that Plaintiff was Mr. Begay's spouse.  Defendant's determination that Plaintiff did not qualify as the surviving spouse of Mr. Begay within the meaning of ERISA was reasonable and supported by substantial evidence. Under the deferential standard applied here, the Defendants' determination must be upheld.

Defendants have demonstrated that their interpretations of the terms of the Plans are reasonable and that their application of those terms to the facts of this case, as they existed before August 7, 2006 was supported by substantial evidence.

**WHEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 34), filed on April 7, 2008, is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant BHP USA Retirement Savings Plan's Motion for Order Affirming Administrative Decision on the ERISA Record (Doc. 36) and Defendant New Mexico Coal 401(k) Personal Savings Plan's Motion for Order Affirming Administrative Decision on the ERISA Record (Doc. 37), both filed on April 7, 2008, are **GRANTED**.

**IT IS FURTHER ORDERED** that Judgment shall issue in favor of Defendants and against Plaintiff.

_____

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**